IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>BENJAMIN RIVERA-ALVARADO,<br><br>Defendant. | MEMORANDUM DECISION<br>AND ORDER<br><br><br><br>Case No. 2:12-CR-288<br><br>Judge Dee Benson |

This matter is before the court on Defendant's motion to suppress. (Dkt. No. 105). On November 20, 2013, the court conducted an evidentiary hearing on the motion. Defendant Benjamin Rivera-Alvarado was present with his counsel, Scott C. Williams. The government was represented by Drew Yeates. Following the hearing, Defendant ordered a transcript and the parties stipulated to a briefing schedule. On January 16, 2014, Defendant filed a Memorandum in Support of Motion to Suppress Photo Spread and in Court Identification Evidence. The government filed a response in opposition on January 29, 2014. After thorough review and consideration of the memoranda submitted by the parties, and the testimony presented at the evidentiary hearing, the court now enters the following Memorandum Decision and Order.

# FINDINGS OF FACT

The court finds the relevant facts as follows.[1] On March 15, 2009, Special Agent Michael Minichino of the Bureau of Alcohol Tobacco, Firearms, and Explosives learned through a weekly law enforcement bulletin that Mexican authorities recovered a Barrett .50 caliber rifle on March 15, 2009. (Tr. at 9, 10.) Agent Minichino investigated the situation and was able to determine that the first retail purchaser of the rifle resold it through KSL Classifieds, a Utah based classified advertising website. (Tr. at 10.) The first retail purchaser reported he had sold the rifle and produced a bill of sale showing that on March 7, 2009, the rifle was sold to a person named Ervin Solis ("Solis"). (*Id.*)

On March 17, 2011, Agent Minichino interviewed Solis at the ATF field office in Salt Lake City, Utah for the first time. (Tr. at 31.) The interview was recorded with video and audio equipment. (Tr. at 38.) After initially denying any involvement with the rifle, Solis later admitted during the interview that he provided the .50 caliber rifle to Mexican nationals because he was accosted and threatened at gunpoint by them on multiple occasions. (Tr. at 29.) Solis was accosted by the men outside Sportsman's Warehouse where Solis worked. (*Id.*) The assailants told Solis that they were doing surveillance on him, which they backed up with details about his personal life that only someone who had actually done surveillance would know. (Tr. at 31.) Solis described the men who accosted him as an older man in his 60s or early 70s, and a younger man in his late 20s or early 30s that wore American Eagle clothing and gold chains. (Transcript

---

[1] Reference to the transcript of the evidentiary hearing conducted on November 20, 2013, will be cited as "Tr. at __."

of March 17, 2011, Interview of Ervin Solis ["Solis 1"] at 116, 120.) Solis described the vehicles the two assailants drove as a new gray Dodge Ram quad cab with dark tinted windows and a gold GMC Jimmy. (*Id*. at 116, 123.)

On March 23, 2011, Agent Minichino met with Solis for a follow up interview at the ATF field office in Salt Lake City. (Tr. at 25.) This interview was not recorded with video equipment, but the audio was recorded. (Tr. at 38.) During the interview Solis was presented with four separate six-pack photo arrays. (Tr. at 43, 44.) Agent Minichino told Solis "don't presume that you need to pick someone in each photo spread." (Transcript of March 23, 2011, Interview of Ervin Solis ["Solis 2"] at 3.) Agent Minichino also told Solis to "take your time" and not to "feel compelled to select anyone." (*Id*.) Solis selected one of the 24 photographs shown to him and identified that person as the younger assailant who wore American Eagle clothing and drove the gray Dodge Ram. (*Id*. at 4, 46.) The younger assailant was later identified by Solis as Juan Darancou ("Darancou"). (*Id*.)

After Solis identified Darancou as the younger assailant, Solis stated to Agent Minichino that he believed Darancou and the older assailant were relatives because of the way they communicated with each other. (*Id*. at 7-8.) Solis explained that the men came into Sportsman's Warehouse four or five times over a two week period to look at guns before Solis was first accosted by them in the Sportsman's Warehouse parking lot. (*Id*. at 14-18.) Solis described being accosted by the same assailants seven to ten times thereafter with the older assailant present on every occasion but one. (*Id*. at 15.) Solis described the older assailant as having a lot of wrinkles on his face with a darker complexion. (Tr. at 33.) On April 21, 2011, Agent

3

Minichino met with Solis a third time in hopes of identifying the older assailant. (Tr. at 44, 45.) Agent Minichino presented Solis with another six-pack photo array but Solis did not identify anyone. (*Id*. at 47.)

On March 7, 2012, Agent Minichino and Agent Greg Estes located Solis at a construction site near Irvine, California, and presented him with another six-pack photo array in hopes that Solis could identify the older assailant. (Tr. at 10-12.) No audio or video recording was made during this interaction. Solis was presented the six-pack photo array while he sat in the back seat of a car with Agent Estes in the driver's seat and Agent Minichino in the front passenger seat. (Tr. at 11, 12.) Before handing Solis the photo array, Agent Minichino instructed Solis that he should not feel compelled to select someone in the photo lineup, and that he needed to keep in mind that appearances change and that law enforcement cannot always find a photo taken from the same time period as when the witness had interaction with a suspect or defendant. (Tr. at 15.) Agent Minichino then reached back and handed the six-pack photo array to Solis. (*Id*.) Almost immediately after Solis took the six-pack photo array from Agent Minichino he identified the photo of Defendant Benjamin Rivera-Alvarado as the older assailant. (Tr. at 17.) Agent Minichino did not do or say anything to Solis that would have suggested that Solis should choose the photo of Defendant Benjamin Rivera-Alvarado. (Tr. at 20, 21.)

Defendant filed the instant motion seeking to suppress the March 7, 2012, photo array on the grounds that the photo array was unconstitutionally suggestive. In support of his motion, Defendant submitted the expert opinions of Dr. David Dodd, who opined that there were flaws in the creation and presentation of the March, 7, 2012, photo array. The court disagrees with Dr.

Dodd's opinions and finds them to be unpersuasive. The court finds, as a matter of fact, that the photograph of the Defendant in the array was not presented to Solis in a manner that was suggestive.

Under all of the factual circumstances, the court finds that the photo array presented to Solis on March 7, 2012, was not impermissibly suggestive.

## DISCUSSION

When a defendant challenges the constitutionality of a photo lineup, the United States Court of Appeals for the Tenth Circuit recognizes a two-part test to determine whether the lineup and the manner in which it is utilized violated the defendant's due process rights. *United States v. Sanchez*, 24 F.3d 1259, 1261 (10th Cir. 1994). First, the trial court must determine whether the photo lineup was "impermissibly suggestive, and if it is found to be so, then the court must decide whether the identifications were nevertheless reliable in view of the totality of the circumstances." *Id*. The court must analyze each of these prongs separately and it is "only necessary to reach the second prong if the court first determines that the array was impermissibly suggestive." *Id*. at 1262.

Defendant asserts the six-pack photo array produced and presented to Solis on March 7, 2012, fails both prongs of the Sanchez test. The court disagrees.

<u>The Six-Pack Photo Array was Not Impermissibly Suggestive</u>

Courts consider a number of factors when determining whether a photo array is impermissibly suggestive, including: 1) the size of the array; 2) the manner of its presentation; and 3) the details of the photographs themselves. *United States v. Sanchez*, 24 F.3d 1259, 1261

5

(10th Cir. 1994).

        1. <u>The Size of the Array</u>

In *Sanchez*, the court determined that the size of the array affects the weight given to other irregularities or problems in the array, and that the use of a "six-pack" photo array is not per se unconstitutional. *Id*. In *United States v. Flores*, the Tenth Circuit held that the use of even just one photo may be acceptable where "the witness has had a clear opportunity to positively identify the suspect prior to the array, the witness expresses a great deal of certainty with regard to the identification, and the circumstances of the identification show a lack of coercive pressure on the identifying witness to make an identification from that photo." 149 F.3d at 1279.

In this case Solis was presented 12 photographs in two separate photo arrays between April 21, 2011, and March 7, 2012. Solis did not make a positive identification when he was presented with the photo array on April, 21, 2011, but he did identify the Defendant as the older assailant when he was presented the photo array on March 7, 2012. At no time before March 7, 2012, was Defendant's photo included in a photo array presented to Solis.

The size of the photo array was not suggestive, let alone impermissibly suggestive. If Agent Minichino had given Solis just one photo of the Defendant instead of including Defendant's photo in a photo array with five others, it is very likely Solis would have identified the Defendant as the older assailant. His identification came immediately after he had been given the photo array. Solis had been clear in earlier interviews that he had had many encounters with the Defendant, including six occasions in the Sportsman's Warehouse parking lot. Agent Minichino did nothing to coerce Solis into choosing the Defendant's photo.

As was the case in *Flores* discussed above, and as the court recognized in its Finding of Fact, the witness in this case, "had a clear opportunity to positively identify the suspect prior to the array," the witness "expressed a great deal of certainty with regard to the identification," and "the circumstances of the identification show a lack coercive pressure on the identifying witness to make an identification from the photo."

Accordingly, the size of the challenged six-pack photo array was not impermissibly suggestive.

### 2. The Manner of Presentation was Not Impermissibly Suggestive

Defendant asserts that the presentation of the March 7, 2012, photo array was impermissibly suggestive because Agent Minichino presented it to Solis differently than the previous photo arrays. For instance, the Defendant points out that the previous presentations were audio recorded and transcribed. However, these differences are outweighed by Agent Minichino's testimony at the evidentiary hearing before the court.

At the evidentiary hearing Agent Minichino testified that before he handed Solis the photo array on March 7, 2012, Solis was instructed that he should not feel compelled to select someone in the photo lineup. Tr. at 15. Agent Minichino also testified that Solis was instructed to keep in mind that appearances change and that law enforcement cannot always find a photo taken from the same time period as when the witness had interaction with a suspect or a defendant. *Id*. Agent Minichino then reached back and handed the six-pack photo array to Solis. *Id*. Agent Minichino testified that almost immediately after Solis took the six-pack photo array from him Solis identified the photo of Defendant Benjamin Rivera-Alvarado as the older

assailant. Tr. at 17. Agent Minichino testified that he did not do or say anything to Solis that would have suggested that Solis choose the photo of Defendant Benjamin Rivera-Alvarado. Tr. at 20, 21. Furthermore, the March 7, 2012, photo presentation was presented differently than the previous photo arrays because it was done in the field, in a parked car at a construction site, and not inside ATF headquarters. As indicated in its Findings of Fact, the court agrees with and finds Agent Minichino's testimony credible in all respects.

Accordingly, the manner in which the March 7, 2012, photo array was presented to Solis was not impermissibly suggestive.

### 3. The Details of the Photographs are not Impermissibly Suggestive

Defendant asserts that his photograph in the March 7, 2012, photo array is impermissibly suggestive because it is "different in kind, color, and hue." In support of his assertion the Defendant relies on *United States v. Wiseman*, where the court noted significant concern where the photo array at issue contained contrasts between the appearance of the defendant's picture and the other photos in the array. 172 F.3d 1196, 1208-09 (10th Cir. 1999). Defendant also relies on a report done by his expert, Dr. David Dodd, who opined that "the foils do not match the description well," and "the foils are all presented in faded photos, in contrast to the brightly lit accused."

However, the United States points out, and the court agrees, that the same arguments Defendant and his expert make could easily be made with any number of the photos in the array because they are all different in some way. For instance, it could be argued that the brightly lit background above the person's head in photo number one lures the unguided eye and causes it to

stand out from the rest. It could also be argued that photo number five attracts attention from the other photos because the person is set back at a distance and has a grey mustache with his head tilted to the side. Furthermore, it could be argued that photo number six stands out from the other photos because the person appears to be closer than the others, has messy hair, and looks angry and callous.

Consequently, as seen with the three examples above, the Defendant and his expert could make similar assertions with any number of the other photographs. The minor distinctions each of the photos possess helps to ensure that no one photograph stands out among the rest.

Notwithstanding the differences emphasized by the Defendant, the court finds that details in the photos included in the March 7, 2012, photo array are not unconstitutionally suggestive. The differences in the Defendant's picture would not necessarily lead the eye of the unguided viewer to Defendant's photograph. All of the persons in the photo array are similar in appearance.

As a matter of law, the March 7, 2012, photo array presented to Solis was not impermissibly suggestive. The court need not reach the second prong of the Sanchez test. Defendant's motion to suppress is DENIED.

It is so ordered.

Dated this 3rd day of March, 2014.

_____
Dee Benson
U.S. District Court Judge